[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the action of the defendant Connecticut Board of Chiropractic Examiners (hereinafter called the defendant Board) suspending the plaintiff's license to practice Chiropractics for a period of one year, assessing him a total civil penalty of $3000 and ordering him to comply with certain other matters.
The plaintiff is a chiropractor, licensed by the State of Connecticut, with an office in Milford. He treated Jacquelyn (Haeche) Goudier and Charlotte Showalter in 1982, 1983 and 1984 at various times. Complaints were made about him to the Connecticut Department of Health Services (hereinafter called the defendant Department). Thereafter the defendant Department presented the CT Page 1990 defendant Board with a Statement of Charges dated February 26, 1988 alleging violations by the plaintiff of 20-29 of the General Statutes on seven counts and asking the defendant Board to take any disciplinary action concerning the plaintiff's license as it may deem appropriate and consistent with law. The matter was set down for a hearing before the defendant Board on August 25, 1988. Four witnesses testified. Nine exhibits were entered into evidence and a transcript of 185 pages was made. The defendant Board then found against the plaintiff in certain matters and imposed the discipline stated in a Memorandum of Decision dated March 22, 1990 and mailed to the plaintiff on March 28, 1990. This appeal followed. The court allowed the plaintiff to supplement the record made before the defendant Board in one respect. A hearing was held, briefs were filed, and the parties made oral arguments to the court.
The Statement of Charges presented to the Defendant Board contained Seven Counts as follows:
The First Count charged that the plaintiff treated Jacquelyn (Haeche) Gourdier between October 26, 1984 and November 5, 1984 and during diagnosis or treatment he manipulated her coccyx improperly because the procedure was not medically necessary.
The Second Count charged that the plaintiff, during diagnosis or treatment of Jacquelyn (Haeche) Gourdier advised her not to marry her fiance, told her that tightness and rotation of her hip bone indicated a death wish against her mother, and made sexually related comments while manipulating the coccyx.
The Third Count charged that in order for Jacquelyn (Haeche) Gourdier to obtain her patient file she was required to sign a general release which purports to discharge the plaintiff from all responsibilities or liabilities.
The Fourth Count charged that the plaintiff treated Charlotte Showalter from approximately February 1982 through May 1983 and took five full spine x-rays.
The Fifth Count charged that the plaintiff failed to keep a properly ongoing record of Charlotte Showalter's presence in the office.
The Sixth Count charged that the plaintiff performed manipulations or adjustments of Charlotte Showalter's meningeals when not medically indicated. CT Page 1991
The Seventh Count charged that in order for Charlotte Showalter to obtain her patient file she was required to sign a general release which purports to discharge the plaintiff from all responsibilities or liabilities.
Three of the above counts — Two, Three and Seven — were withdrawn by the defendant Department. The defendant Board found against the plaintiff concerning Counts One, Four and Five. As to the Sixth Count, the defendant Board found no violation of the charge alleged.
As to each of Counts One, Four and Five the defendant Board ordered the plaintiff's license to be suspended concurrently for a period of one year. Immediately upon completion of the one year suspension period, the plaintiff shall be placed on probationary status for a period of three years and, at the defendant Board's request, during the period of probation, the plaintiff must appear before the defendant Board with all current patient files to allow evaluation of the plaintiff's record keeping practices. Also, the plaintiff is assessed a total civil penalty of $3000, representing a penalty of $1000 for each of Counts One, Four and Five. This civil penalty is to be paid by certified check, made out to Treasurer, State of Connecticut, and mailed or delivered to the defendant Department. The decision was to be effective and the civil penalty paid in full 45 days from March 28, 1990 (the date of mailing the decision to the plaintiff). The suspension and probation ordered shall not run concurrently with any prior suspension or probation ordered by the defendant Board against the plaintiff.
Count One of Statement of Charges
The plaintiff testified he did manipulate Jacquelyn (Haeche) Gourdier's (the patient) coccyx. He said the patient came to him and told him she fell on her rear end going down some steps, that she slipped and fell on her rear end going down the steps. In the notes the plaintiff made when he interviewed her, he wrote that the patient complained of pain down the rear end of the leg on the right side, that he palpated the area and found the coccyx was extremely tender, especially on the right side and also on the left side. He found a forward subluxation of the coccyx. (A medical dictionary states that this means an incomplete dislocation). This subluxation was fairly severe. It lasted through almost an entire week of trying to pull it forward by tractioning the ligaments CT Page 1992 along the sacrum that are attached to the coccyx. This problem did not respond to the plaintiff's attempts to pull it forward. The plaintiff noted the problem in a document entitled Chiropractic Neurological — Orthopedic Physical Examination that when he palpated the right side of the coccyx there was severe pain which made the patient jump and that when he palpated the left side of the coccyx there was moderate pain. The plaintiff felt that his method of trying to solve her problem was not working and that he would have to insert his finger into the rectum and pull the coccyx backwards because it was stuck forward from the trauma. After the coccygeal adjustment it was difficult for the patient to do a follow up exam that day in the area but when he did palpate it, she did not jump. Later she indicated that the pain moderating from the forward subluxation of the coccyx was eased. She walked better and sat without leaning away from the right side and seemed more comfortable in her manner. The plaintiff indicated on the x-rays taken of the patient that there was a discontinuity in back which would tend to indicate the posterior part was back and another part was forward. It was very faint. He did not indicate in the Progress Report a diagnosis which would substantiate the procedure. That diagnosis was not updated. It was not wrong. It just was incomplete. The plaintiff saw the patient six times within the course of a week and a day. Before he went into the rectum he palpated over the skin where the coccyx was.
Dr. Steven E. Owens, a chiropractic physician, was called as an expert and testified for the defendants. On page 53 of the transcript he testified:
 THE WITNESS: I would say that it would not be appropriate to examine or manipulate the coccyx based on what I heard the patient say and the history of the patient.
Q Could you explain why it was inappropriate?
 A I did not see nor did I hear a specific complaint to the area of the coccyx which might indicate that there would be a fracture or disfunction or a dislocation or a subluxation of the coccyx. I did not see in the record anything in the diagnosis related to a coccygeal complaint. I also did not see, on reviewing x-rays, a diagnostic impression of the coccyx or the coccygeal area. CT Page 1993
In its finding on the First Count the defendant said:
 In reviewing Ms. Gourdier's medical records (Record, Ex. D-3), and testimony presented at the hearing, the Board finds that no coccygeal adjustment of any kind was clinically substantiated. Despite Respondent's contentions that the coccygeal-meningeal manipulation at issue was a necessary treatment (Record, Tr. at 98), he fails to present convincing rationale supporting that determination. Contrary evidence as to the severity of pain upon palpation of the sacral area, upon which Respondent wholly relied in substantiating the manipulation procedure, is noted. Record, Ex. D-3; Tr. at 61-62, 95-96.
 The Department's expert witness, Stephen Owens, D.C., testified that "there was no sufficient X-ray information to justify that examination or procedure", and further, that "none of the diagnoses given [on the record] would involve that kind of a procedure." Record, Tr. at 71, 75. Finally, Respondent admits that he never documented a diagnosis substantiating the procedure. Record, Tr. at 86.
 Based on the evidence on the record, the Board finds that Respondent's manipulation of the coccyx in the case of Jacquelyn (Haeche) Gourdier constituted negligent or incompetent conduct in the practice of chiropractic, as alleged in the First Count.
The defendant Board, obviously, did not believe the plaintiff.
Counts Four and Five of Statement of Charges
The court believes the defendant Board reasonably could find that the plaintiff's conduct discussed in the Fourth and Fifth Counts was negligent or incompetent practice under 20-29 of the General Statutes. The court also believes that the penalties imposed for violation of such counts were unreasonably harsh.
The court dismissed the plaintiff's appeal as to the orders of the defendant Board concerning Counts One and sustains the appeal CT Page 1994 as to the orders on Counts Four and Five.
Thomas J. O'Sullivan Trial Referee